## ATKINSON *et al. v.* TABOR *et al.*

(*Supreme Court of Colorado, May 16, 1884—Motion to Dismiss Appeal.*)

APPEAL—WAIVER OF RIGHT TO PROSECUTE.  A fund in litigation deposited in a bank, which is deemed unsafe; an appeal pending from a judgment disposing of same; a person having a contingent interest in the fund, in common with appellants, withdraws a portion thereof from the bank, with the sole purpose of saving it, in view of the failing condition of bank—the appellee having refused to consent to a change of the place of deposit:  *Held*, that the withdrawal is not such an appropriation of the fund in litigation as amounts to a waiver of the right to prosecute the appeal.

*Per Curiam.*  We do not regard Sullivan and his associates as occupying the relation of parties to this litigation.  Their interest in the result accrues by virtue of their contract with Atkinson and Chaney, the appellants.  If, by virtue of the terms of that contract, Sullivan and his associates drew out and appropriated to their use, or with the intention of so appropriating it, three-fourths of the money deposited by Tabor and Smith in the Bank of Leadville in payment of the purchase money of the Tam O'Shanter group of mines, it was the same in law as if Atkinson and Chaney had drawn the money themselves; and it would be a waiver of their right further to prosecute the appeal.  If, however, money and securities, to an amount covering the contingent interest of Sullivan and others in the deposit, were drawn out of the bank on account of its failing condition alone, and after Tabor and Smith had declined to agree to a change of the deposit to a place of greater safety, pending the result of the litigation; and if there was no actual appropriation of such portion of the deposit, and none was intended, but the action complained of was taken merely to secure from the impending disaster that proportion of said deposit to which Sullivan and his associates might become entitled, under their said contract, by the judgment of this Court, it would seem to be extending the doctrine of waiver beyond the precedents cited to hold that the right of the appellants to further prosecute their appeal is thereby cut off.

Some of the alleged facts concerning the purpose and necessity of the acts supposed to constitute the waiver are disputed,

and without passing upon the conflicting statements, it is sufficient to say, that upon consideration of the case as presented upon the motion to dismiss the appeal, we do not feel warranted in granting the motion. Being of opinion that the rights of the parties should be adjudicated upon the merits, the case will be reserved for final hearing.

The motion to dismiss the appeal is denied.

*Markham, Patterson & Thomas,* and *Clinton Reed,* for appellants.

*L. C. Rockwell,* for appellees.

———————————

Two interesting questions, by no means new, arose recently in the Supreme Court of Iowa and Texas Court of Appeals. In the former (*Boyce* v. *Wabash, etc., R. Co.*), the plaintiff had had the misfortune to own some mules, which came in contact in the State of Illinois with one of the defendant's "iron horses," and after a contest of brief duration, were "laid low." The aggrieved owner for some reason not apparent, asked the Courts of Iowa for justice in the shape of double damages, according to the "killing stock" statutes. It so happens that the Legislatures of the two States were of the same mind upon this question, and a railroad in either State is "mulcted" to the same extent. The question was whether the Courts of Iowa could give the aggrieved owner double damages, it being claimed that the Iowa statute could not be appealed to, because the Iowa statute was contemplated for the protection of Iowa mules only, and that the Illinois statute could not be invoked, because it had no extra territorial force, *i. e.,* the Courts of another State could not enforce it. But the Court said that it was "not an attempt to give extra territorial force to a statute" of the State of Iowa, or "to recover under a statute thereof for the invasion of a right or the infliction of a wrong in some other State." After stating that a common law tort is transitory, and, therefore, may be the foundation of an action anywhere, (*Smith* v. *Bull,* 17 Wend., 323), and referring to "two recent and well considered cases," as having "decided that an action for wrongful death will lie in a different State from that in which it occurred, (*Dennick* v. *R. Co.,* 103 U. S., 11; *Leonard* v. *Columbia Steam Nav. Co.,* 84 N. Y., 48,) it contends